IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| BILLY C. PRUDEN, SR., et al.,  ) | |
| ) | |
| Plaintiffs,  ) | |
| ) | CASE NO.: |
| v.  ) | |
| ) | CV-02-RRA-1255-W |
| THE ALLSTATE GROUP LONG  ) | |
| TERM DISABILITY INSURANCE  ) | |
| PLAN, et al.,  ) | |
| ) | |
| Defendants.  ) | |

**MEMORANDUM OPINION**

The magistrate judge filed a report and recommendation on August 10, 2006, recommending that the defendants' motions for summary judgment be granted and this cause be dismissed with prejudice. Within the time allowed, the plaintiffs have objected to the report and recommendation. Their objections will be addressed herein.

Neither plaintiff makes an objection to the recommendation that the state law claims be dismissed as preempted.[1] Also, Mrs. Pruden makes no objection to the recommendation that her ERISA case be dismissed for lack of standing.[2]

In the first assignment of error, the plaintiffs argue that the recommendation was entered "by the Honorable Robert R. Armstrong, Jr., without any evidentiary hearing." *Plaintiffs' Objections and Brief in Opposition to Magistrate Report and Recommendation Awarding Defendants' Motion*

---

[1] As noted in the original report and recommendation, the plaintiffs made no response to this contention in their original response to the motions for summary judgment.

[2] As noted in the original report and recommendation, the plaintiffs made no response to this contention in their original response to the motions for summary judgment.

*for Summary Judgment (hereinafter Plaintiffs' Objections)*, at 1. However, "a formal evidentiary hearing prior to entry of summary judgment [is] not . . . required." *Smart v. Jones,* 530 F.2d 64, 65 (5th Cir. 1976) *citing Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858, 862 (5th Cir. 1970).[3] The briefing schedule in this matter gave clear notice to the parties as to when the court would take up the motion for summary judgment. All sides had ample opportunity to brief the issues and submit evidence. There is no due process clause violation caused by the failure to have an evidentiary hearing,[4] and the requirements of Fed. R. Civ. P. 56 have been upheld.

The plaintiffs next argue as follows:

> Judge Armstrong's Report fails to properly take into account the full and complete administrative record up to and including the November 16, 2001 letter by which, after repeated requests from Mr. Pruden's counsel, the Plan Administrator finally issued its "final" determination and decision of denial. Rather, the Magistrate impermissibly limits his review to only the *initial* administrative record which was, as the Record shows, concluded after MetLife's initial benefit determination made on March 18, 1998. See Magistrate Report, at 9 ("Because the [initial] benefit decision had already been made at this point, this information [treating physician Dr. Craig Buettner's letter of May 18, 1998], as well as any further information submitted by Mr. Pruden after March 18, 1998, was not part of the administrative record available at the time the determination as to Mr. Pruden's disability date was made [by MetLife].") (emphasis supplied). However, such a narrow and restrictive review by the Magistrate effectively eviscerates the very appeal process that is otherwise guaranteed to all ERISA plan participants and beneficiaries, such as the Prudens.

*Plaintiffs' Objections*, at 4 (emphasis in original).

The plaintiffs further cite this court to *Kalish v. Liberty Mutual/Liberty Life Assur. Co. of Boston*, 419 F.3d 501, 511 (6th Cir. 2005), a Sixth Circuit opinion, for the proposition that the record

---

[3] In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

[4] Nor has such a violation been alleged. The record is also devoid of a motion for evidentiary hearing.

should be limited to the evidence that was before the administrator at the time of the "final" decision, a decision the plaintiffs insist was not made until November 16, 2001. The plaintiffs write:

> Allstate and Mr. Daniels issued their final determination by way of letter to counsel for the Prudens on November 16, 2001; hence, the Magistrate has impermissibly cut off and limited his review of the administrative record as of March 18, 1998, thereby rendering Mr. Pruden's ERISA appeal rights moot – a loss of more than three (3) years of communications and protestations with the Plan Administrator!

*Plaintiffs' Objections*, at 5.

The implication is that the decision made on March 18, 1998 was not a "final" decision. Notably, the plaintiffs did not argue this point in their initial brief in response to the motions for summary judgment. Accordingly, this was not an issue in the motions for summary judgment. Indeed, in its brief, AmSouth notes the date of the decision as being March 18, 1998. In response the plaintiffs write: "Admitted as to date of decision." *Plaintiffs' Brief in Opposition to Motion for Summary Judgment*, at 17. The plaintiffs did not at that time recognize or note a distinction between a so-called "initial" determination date versus a "final" date. Now, however, the plaintiffs go so far as to insert the word "initial" into the court's quotation regarding the decision.

The plaintiffs have cited no Eleventh Circuit precedent on this point.[5] The plaintiffs have also not cited any evidence that the March 18, 1998 decision was not final. There is no record that the administrator stated that the March 18, 1998 decision was merely an *initial* decision open to continued review, or that the decision was somehow reopened.

Also, the November 16, 2001 letter referred to by the plaintiffs could not reasonably be considered a *determination* as much as it is an *explanation* of the reasons Mr. Pruden's disability was calculated as it was. Furthermore, the letter dealt chiefly with the calculations of Mr. Pruden's QAE

---

[5]The plaintiffs state that they could find no Eleventh Circuit case. *Plaintiffs' Objections*, at 4.

and whether he was provided with proper information regarding his various benefit plans. Even then, the language does not indicate that any new evidence was available, provided, or even considered on *that* limited issue. The language of the letter states that the "determination is final." That language alone does not push the "finality" date any more than writing such a phrase now would do so.

The plaintiffs next argue that the medical evidence in the record demonstrates that the plaintiff was totally disabled as of January or February, 1997. Of course, the plaintiffs note that the evidence to which they refer was not before the administrator at the time of the decision regarding disability.

Next, the plaintiffs argue that the court's statement regarding the plaintiff's ability to make phone calls and answer questions, along with pay records showing continued full time employment, was improperly used by the court to determine that the plaintiff could perform the functions of his employment. They write:

> The Magistrate's Report effectively "rubber stamps" Allstate's effective "rewrite" of the definition of "totally disabled" as far as Mr. Pruden was concerned, to "read" something less than as defined by the written words used in the SPD: as Allstate would have the Court read that plan definition: a participant becomes "totally" disabled only when Allstate takes him off its payroll, regardless of any inability to perform the material aspects of one's job. Such re-write of the plan definition of that term, is not permitted by the law, at least not after the participant's claim is already pending and, well, just plain defies simple logic, most respectfully.

*Plaintiffs' Objections*, at 9.

The plaintiffs lose sight of the burden which falls upon *them* to prove disability. It is not the fact that the plaintiff could perform these tasks or received this money that proves lack of disability. It is the fact that the plaintiff could perform these tasks, combined with other factors, including the

complete lack of any medical evidence of disability, which destroys the *plaintiffs' attempts to prove disability* at the earlier date.

The plaintiffs next write:

> The Report states: "As Mr. Pruden admits in his brief, this case presents a dispute over the date of Mr. Pruden's disability for LTD Plan purposes, not the calculation of the QAE." Magistrate Report, at 17; and, "Mr. Pruden's QAE as of March 1, 1997 is not in dispute". Id., at 20. Notably, no citation to Plaintiffs' Amended Complaint or other pleadings is stated at either of these points in the Report.
> 
> Clearly the Magistrate's Report asserts in error, we respectfully note, that Mr. Pruden only disputed his disability date.

*Plaintiffs' Objections*, at 17-18.  The plaintiffs further state:

> The Report correctly states the LTD Plan definition of "Qualified Annual Earnings" (QAE), Magistrate Report at bottom of page 4, noting that "[t]he amount of monthly LTD benefits to the employee is based upon a formula that depends in **key** part on the employee's Qualilfied Annual Earnings ('QAE'), which are based on earnings in the prior **year**." As pointed out and emphasized in Plaintiffs' Brief in Opposition to Summary Judgment, doc. 40, MetLife (and now the Magistrate Report both) "gloss over" and effectively "write out" this "prior year's" earnings from the definition and more importantly for Mr. Pruden, the calculation of his applicable QAE. See MetLife Submission at page 297; Plaintiffs' Brief, doc. 40, on page 4, ¶ 5.
> 
> Despite the unequivocal SPD language that defines the current year's QAE as "based on earnings in the prior year", Allstate calculated Mr. Pruden's applicable 1997 QAE at $2,000 per month, a figure blindly accepted by MetLife and now the Magistrate's Report. Magistrate Report, at 5 ("Upon recalculation of the QAE number on March 1, 1997, this figure was adjusted to $2,000 [but surprisingly still rendering "lip service" most respectfully, but ignoring the true impact of the trailing clause], **based on Mr. Pruden's production numbers for the prior year**.") (emphasis supplied).
> 
> Even assuming that the Report uses or intended the terms "production" and "earnings" interchangeably, the record on review clearly establishes that $2,000 for the monthly "prior year" 1996 numbers is inaccurate – simply a "wrong" decision. See Plaintiffs' Brief in Opposition, doc. 40, at ¶ 9, on page 9 (noting that Allstate's own compensation records for the **Year 1996 reflect total compensation and earnings for Mr. Pruden being $29,679,** Allstate Exhibit 8 of Allstate's record submissions). Apparently, Allstate's payroll records are to be used only when such use results in a lesser rather than greater benefit for a participant.
> 
> By properly calculating the benefits formula noted in the Magistrate Report at the top of page 5, and utilizing the actual "prior year" 1996 "earnings" of $29,679, MetLife and His Honor Judge Armstrong should have easily reflected a monthly benefit amount due Mr. Pruden of **at least $1,200** as opposed to the $1,000 amount dictated by Allstate to MetLife in early 1998 (1996 earnings x 50% divided by 12 and rounded to nearest one hundred dollars, yields $1,236.625 as monthly benefit amount before rounding). Accordingly, the Magistrate Report is in error, and fails to conduct a proper and thorough review of even the

5

limited March 18, 1998 *initial* administrative file since Mr. Pruden's actual 1996 earnings were or should have at least been made a part of that limited file on review.

In directing MetLife to pay only a $1,000 monthly benefit, Allstate made a "wrong" decision, wrong on the face of the Plan document, a wrong that is now being improperly adopted by the Magistrate – the calculator does not lie. The above $1200 monthly benefit is a minimum amount due Mr. Pruden **regardless** of any continuing dispute over the date of disability onset. For this reason alone, most respectfully, the Report is due to be rejected as in error; end of analysis. Williams v. BellSouth Telecomms., Inc., 373 F.3d 1132, 1134 (11th Cir.2004).

Moreover, the full administrative file under review is replete with Allstate representations as to Mr. Pruden's salary/earnings base being $3,000 per month rather than the ultimately decided, albeit a "wrong" $2,000 figure (yielding the lower $1,000 monthly benefit amount that Mr. Pruden disputed as of February 10, 1998). Plaintiffs' Brief in Opposition to SJ Motion, doc. 40, at 6-8, 14, 16-17 and accompanying citations to the Record contained therein; also see MetLife Submission, at page 273 (Bill Pruden, Life Specialist, salary 3,000.00 and leave of absence granted May 18, 1997 – another contradiction, even if Mr. Pruden was still attempting to work as of March 21, 1997, per Allstate payroll records, why did it take over two more months before the "paperwork" caught up with his affliction and he went on "sick leave" on May 18, 1997).

*Plaintiffs' Objections*, at 17-20 (emphasis in original).

Under the LTD Plan, when an LTD claim is made, the starting point for the calculation of monthly disability benefits is the QAE figure. The QAE is recalculated every March 1st, during the period an employee is active. Under the terms of the LTD Plan, when an LTD claim is made, it makes no difference what a claimant was eligible to receive at a given point during the prior year. The starting point for calculation of eligible monthly benefits is the QAE *in effect at the time the claimant's disability began*. Because Allstate determined that Mr. Pruden's disability began after March 1, 1997, the March 1, 1997 QAE calculation of $2000 was employed in determining Mr. Pruden's monthly disability benefits. The only question that remains then, is whether the March 1, 1997, QAE was determined properly. The plaintiffs state that "the record on review clearly establishes that $2,000 for the monthly "prior year" 1996 numbers is inaccurate — simply a 'wrong' decision." The plaintiffs direct the court to Mr. Pruden's payroll records of 1996, which show that he had "total compensation and earnings [at] $29,679." Using this figure, the calculations would

6

provide a higher monthly benefit amount. Notably, however, Mr. Pruden's *total earnings* for that year are only $23,688.00, less than $2,000.00 per month. This $2,000 figure is exactly what the defendants found the QAE to be. The plaintiffs provide no evidence that the larger figure is the proper starting point, and do not even cite the court to the "total earnings" section of the pay records. Clearly, there is no evidence that the calculation of the QAE was arbitrary or capricious.

The remaining objections are without merit.

Having carefully reviewed and considered *de novo* all the materials in the court file, including the report and recommendation and the objections thereto, the court is of the opinion that the magistrate judge's report is due to be and is hereby ADOPTED and his recommendation is ACCEPTED. The court EXPRESSLY FINDS that there are no genuine issues of material fact and that the defendants are entitled to judgment as a matter of law. Accordingly, defendants' motions for summary judgment are due to be GRANTED and this action is due to be DISMISSED WITH PREJUDICE. A Final Judgment will be entered.

DONE this 24th day of August, 2006.

                                                          _____
                                                          WILLIAM M. ACKER, JR.
                                                          UNITED STATES DISTRICT JUDGE